**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

13-20364 CR-UNGARO

/TORRES

CASE NO. _____

18 U.S.C. § 2339B(a)(1)
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 981(a)(1)(G)

FILED by _____

MAY 21 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA – MIAMI

**UNITED STATES OF AMERICA**

**v.**

**GUFRAN AHMED KAUSER MOHAMMED,**
    a/k/a "Nasr,"
    a/k/a "AuthenticTauheed1,"
    a/k/a "NasrullahiKareeb,"
    a/k/a "NasrullahiQareeb,"
    a/k/a "Kauser Mohammed,"
    a/k/a "csitcr,"
    a/k/a "muwahidone1," and
**MOHAMED HUSSEIN SAID,**
    a/k/a "Bill,"
    a/k/a "Billph86,"
    a/k/a "Mohammed Salem bin Abdisheikh,"
    a/k/a "Mohamed Hussein,"
    a/k/a "Abdul-Rahman Abdul Rahim,"
    a/k/a "Tibyan,"

                   **Defendants.**
_____/

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times material to this Indictment:

Al-Qa'ida

1.      Al-Qa'ida, also known as the Islamic Army, the World Islamic Front for Jihad

Against Jews and Crusaders, Islamic Army for the Liberation of the Holy Places, the Usama Bin

Laden Network, the Usama Bin Laden Organization, the Islamic Salvation Foundation, and the Group for the Preservation of the Holy Sites, is an international terrorist group dedicated to opposing with force and violence the United States and other governments, including Arab governments, that it views as unfaithful to its extreme version of Islam and has committed multiple terrorist attacks against such countries, their citizens, and their interests, both at home and abroad. "Al-Qa'ida" is an Arabic word that loosely translates as "the Base."

2.      Al-Qa'ida has injected itself into otherwise localized conflicts around the world through proxy militias and armed groups to promote its extreme form of Islam.  One such conflict is ongoing in Syria, in which revolutionaries are seeking to overthrow the secular government of President Bashar al-Assad.  The revolutionaries have organized a group called the Free Syrian Army, which is fighting to establish a Western-style democracy.  However, al-Qa'ida has also joined the conflict through a group known as al-Nusrah Front, which is an armed faction whose leadership consists largely of al-Qa'ida veterans from the most recent Iraq conflict.  Al-Nusrah Front also seeks the overthrow of the al-Assad regime, not for the purpose of establishing democracy, but in order to impose a strict Islamic state, which could be used as a safe haven for terrorists and other extremists.  Al-Nusrah Front has used terrorist tactics to this end, including suicide bombings.

3.      Al-Qa'ida has a long history of committing terrorist acts against the United States and its interests, and thus al-Qa'ida has been designated as a Foreign Terrorist Organization under United States law.  On October 8, 1999, the U.S. Department of State initially designated al-Qa'ida as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act, as amended, and it remains so designated today.  On September 23, 2001, al-Qa'ida was named as a Specially Designated Global Terrorist under Section 1(a) and the Annex

to Executive Order 13224. The finding in support of these designations was that al-Qa'ida has committed, or poses a significant risk of committing, acts of terror that threaten the security of United States nationals or the national security, foreign policy, or economy of the United States.

### Al-Qa'ida in Iraq/Al-Nusrah Front

4.     Al-Nusrah Front, also known as Jabhat al-Nusrah, Jabhet al-Nusra, The Victory Front, and Al-Nusrah Front for the People of the Levant, is a terrorist organization based in Syria, whose primary objective is the overthrow of the secularist regime of President Bashar al-Assad. Al-Nusrah Front is most directly an extension of the terrorist organization known as al-Qa'ida in Iraq ("AQI"), which fought United States and coalition troops stationed in Iraq to overthrow the autocratic regime of President Saddam Hussein and establish a democratic government. AQI itself is part of the larger al-Qa'ida organization. Veterans of AQI have crossed the border into Syria to join the fighting there and have re-organized themselves as al-Nusrah Front. Al-Nusrah Front is using terrorist tactics, such as suicide bombings, which its members have used in Iraq against United States and coalition forces. Al-Nusrah Front portrays itself as part of the legitimate Syrian opposition to the al-Assad regime while it is, in fact, an attempt to exploit the instability in that country for its own purposes, to include establishing a fundamentalist Islamic state in Syria that could serve as a safe haven for terrorists. "Al-Nusrah" is an Arabic word that loosely translates as "the Support."

5.     The United States has recognized the threat from al-Nusrah Front, comprised as it is of veteran terrorists who attacked United States and coalition troops in Iraq, because it is killing numerous innocent Syrian civilians. The continuing violence of its members, as well as the fact that it destabilizes and threatens to control an important country in the Middle East, means that al-Nusrah Front has been named as a Foreign Terrorist Organization under United

States law.  On December 11, 2012, the U.S. Department of State amended its pre-existing designation of AQI as a Foreign Terrorist Organization to include al-Nusrah Front and its various aliases.  Accordingly, the group will be referenced in this Indictment as "AQI/al-Nusrah Front." The U.S. Department of State had previously designated AQI on October 15, 2004, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act, as amended, and as a Specially Designated Global Terrorist under Section 1(b) of Executive Order 13224, as amended.  Although AQI/al-Nusrah Front is part of the same radical Islamist movement and uses the same terrorist tactics as al-Qa'ida, it has retained a separate designation under United States law.  The finding in support of amending the AQI designation was that al-Nusrah Front has committed hundreds of terrorist attacks in an attempt to hijack the struggles of the Syrian people for its own malign purposes.

Al-Shabaab

6.      Al-Shabaab, also known as al-Shabab, Shabaab, the Youth, Mujahidin al-Shabaab Movement, Mujahideen Youth Movement, Mujahidin Youth Movement, MYM, Harakat Shabab al-Mujahidin, Hizbul Shabaab, Hisb'ul Shabaab, al-Shabaab al-Islamiya, Youth Wing, al-Shabaab al-Islaam, al-Shabaab al-Jihaad, and the Unity of Islamic Youth, is a terrorist organization based in Somalia whose primary objectives are the overthrow of the Somali Transitional Federal Government ("TFG"), a government backed by the United States, the United Nations, and the African Union, and the establishment of a strict Islamic state, which could be used as a safe haven for terrorists.  Al-Shabaab has committed terrorist attacks both within Somalia and in neighboring countries, such as Kenya, that support the TFG.  "Al-Shabaab" is an Arabic word that loosely translates as "the Youth."

7.      Al-Shabaab has its historical roots in a loose coalition of Islamic insurgents in Somalia called the Islamic Courts Union, which fought against the TFG and took control of much of southern Somalia.  Al-Shabaab was an extremist military faction within the Islamic Courts Union, and it eventually took over the fight against the TFG.  Al-Shabaab has targeted for terrorist attacks all aspects of the TFG, including police stations, border posts, and government facilities, as well as civilian targets.  Al-Shabaab has also launched terrorist operations against civilians in foreign countries.  Fighters from other countries have traveled to Somalia to fight for al-Shabaab and known al-Qa'ida operatives have resided in Somalia under the protection of al-Shabaab and its leadership.  The United States has provided the TFG with weapons, military training, and humanitarian aid in response to the al-Shabaab threat.

8.      Al-Shabaab is another terrorist group that has been deemed to threaten the United States and its interests, and thus it too has been designated a Foreign Terrorist Organization under United States law.  On February 26, 2008, the U.S. Department of State designated al-Shabaab as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act, as amended, and as a Specially Designated Global Terrorist under Section 1(b) of Executive Order 13224, as amended.  The finding in support of this designation was that al-Shabaab has committed, or poses a significant risk of committing, acts of terror that threaten the security of United States nationals or the national security, foreign policy, or economy of the United States.  Al-Shabaab has had long-standing ties with al-Qa'ida in East Africa, and on or about February 10, 2012, al-Shabaab and al-Qa'ida announced a merger.  Al-Shabaab has retained its separate designation as a Foreign Terrorist Organization under United States law.

## Terms in this Indictment

9.      As used in this Indictment, and also as used by the Defendants and by radical Islamist militants, including al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab, the Arabic term "jihad" refers to violent jihad, which is the use of physical violence, including murder, kidnapping, and maiming, to bring about the downfall of governments that are perceived as opposed to a radical version of Islam and the imposition of Sharia or strict Islamic law as the exclusive basis for civil order.

10.     As used in this Indictment, and also as used by the Defendants and by radical Islamist militants, including al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab, the Arabic term "mujahideen" refers to individuals engaged in violent jihad, including the al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab terrorist groups.

## The Defendants

11.     **GUFRAN  AHMED  KAUSER  MOHAMMED,  a/k/a  "Nasr,"  a/k/a "AuthenticTauheed1," a/k/a "NasrullahiKareeb," a/k/a "NasrullahiQareeb," a/k/a "Kauser Mohammed," a/k/a "csitcr," a/k/a "muwahidone1" ("MOHAMMED")**, is a naturalized United States citizen who was born in India and who lived in California until March 23, 2011, when he moved to Dammam, Saudi Arabia.  At all relevant times, **MOHAMMED** solicited information on various websites about supporting al-Shabaab and has sent a series of Western Union wire transfers to East Africa for the purpose of supporting al-Shabaab.  **MOHAMMED** has further sent Western Union wire transfers to an FBI Online Covert Employee ("OCE") who was posing as an al-Qa'ida and AQI/al-Nusrah Front fundraiser, recruiter, and supplier, for the purpose of supporting al-Qa'ida and AQI/al-Nusrah Front.  He has facilitated the introduction of the OCE to other mujahideen and jihad supporters for the same purpose.

12.    **MOHAMED HUSSEIN SAID, a/k/a "Bill," a/k/a "Billph86," a/k/a "Mohammed Salem bin Abdisheikh," a/k/a "Mohamed Hussein," a/k/a "Abdul-Rahman Abdul Rahim," a/k/a "Tibyan" ("SAID")**, is a Kenyan national who, at all relevant times, has been a resident of Nairobi and Mombassa, Kenya.  **SAID** has developed and maintained close ties with al-Shabaab and its operatives in both Kenya and Somalia and, because of these contacts, has received a series of Western Union wire transfers from **MOHAMMED**, which he (**SAID**) then agreed to forward to al-Shabaab to support its activities.  **SAID** has further agreed with the OCE, after **MOHAMMED** introduced them, to support al-Qa'ida and AQI/al-Nusrah Front and has made arrangements to recruit and move experienced al-Shabaab fighters to the conflict in Syria.  **SAID** has conveyed information from the OCE to these fighters about the fact that they will be joining AQI/al-Nusrah Front instead of the Free Syrian Army, has made arrangements to secure travel documents for these fighters, and has planned how to transport these fighters from Kenya and Somalia to the front lines in Syria.

## COUNT 1

**Conspiring to Provide Material Support to a
Foreign Terrorist Organization
(al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab)
(18 U.S.C. § 2339B(a)(1))**

Paragraphs 1-12 of this Indictment are re-alleged and incorporated herein by reference.

Beginning on a date unknown to the Grand Jury, but no later than May 18, 2011, and continuing through the date of this Indictment, at places outside the United States, that is, the Kingdom of Saudi Arabia and the Republic of Kenya, with Miami-Dade County, in the Southern District of Florida, being the district where a defendant was first brought, the defendants,

**GUFRAN AHMED KAUSER MOHAMMED,
a/k/a "Nasr,"
a/k/a "AuthenticTauheed1,"**

a/k/a "NasrullahiKareeb,"
a/k/a "NasrullahiQareeb,"
a/k/a "Kauser Mohammed,"
a/k/a "csitcr,"
a/k/a "muwahidone1," and
**MOHAMED HUSSEIN SAID,**
a/k/a "Bill,"
a/k/a "Billph86,"
a/k/a "Mohammed Salem bin Abdisheikh,"
a/k/a "Mohamed Hussein,"
a/k/a "Abdul-Rahman Abdul Rahim,"
a/k/a "Tibyan,"

did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b)(1), including but not limited to currency, monetary instruments, financial services, and personnel, to a Foreign Terrorist Organization, that is, al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab, knowing that al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab have engaged and engage in terrorist activity, as defined in Title 8, United States Code, Section 1182(a)(3)(B).

## PURPOSES AND OBJECTS OF THE CONSPIRACY

13.    It was the dual purpose and object of the conspiracy to advance the jihad of al-Qa'ida through AQI/al-Nusrah Front, on the one hand, and al-Shabaab, on the other hand, by providing financial support and recruits to affiliated mujahideen who sought to fight and commit terrorist attacks in countries such as Syria and Somalia, for the purpose of opposing the governments of those countries, killing and injuring their citizens, and establishing strict Islamic states under Sharia law within their borders.

## MANNER AND MEANS OF THE CONSPIRACY

14.    The manner and means by which the defendants and their co-conspirators sought to accomplish the purposes and objects of the conspiracy included, among others, the following:

a.      Members of the conspiracy would and did solicit, raise, and donate, and attempt to solicit, raise, and donate, monies to support, train, and equip the mujahideen affiliated with al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab for the purpose of fighting jihad.

b.      Members of the conspiracy would and did transfer monies to each other and to those believed to support the mujahideen affiliated with al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab for the purpose of fighting jihad.

c.      Members of the conspiracy would and did recruit, and attempt to recruit, individuals to join the mujahideen affiliated with al-Qa'ida, AQI/al-Nusrah Front, and al-Shabaab for the purpose of fighting jihad.

d.      Members of the conspiracy would and did select recruits who had been affiliated with, and fought for, al-Shabaab to travel from East Africa to join the mujahideen affiliated with AQI/al-Nusrah Front.

e.      Members of the conspiracy would and did select recruits who had committed terrorist attacks to travel from East Africa to join the mujahideen affiliated with AQI/al-Nusrah Front.

f.      Members of the conspiracy would and did make travel arrangements and obtain travel documents so that recruits could travel from East Africa to join the mujahideen affiliated with AQI/al-Nusrah Front.

g.      Members of the conspiracy would and did use codes and other secret communication techniques to cover, conceal, and disguise their true identities, locations, and activities.

## OVERT ACTS

In furtherance of the conspiracy and to effect its purposes and objects, at least one of the co-conspirators committed, or caused to be committed, at least one of the following overt acts:

1.     From on or about May 18, 2011, until on or about May 20, 2011, **MOHAMMED** and **SAID** met in Saudi Arabia and made arrangements to provide material support and resources to al-Shabaab.

2.     On or about June 7, 2011, **MOHAMMED** caused to be sent a Western Union wire transfer to **SAID** in the amount of $2,062.55, which was intended to support al-Shabaab.

3.     On or about June 12, 2011, **MOHAMMED** caused to be sent a Western Union wire transfer to **SAID** in the amount of $799.97, which was intended to support al-Shabaab.

4.     On or about July 9, 2011, **MOHAMMED** caused to be sent a Western Union wire transfer to **SAID** in the amount of $2,182.55, which was intended to support al-Shabaab.

5.     On or about July 13, 2011, **MOHAMMED** caused to be sent a Western Union wire transfer to **SAID** in the amount of $746.60, which was intended to support al-Shabaab.

6.     On or about August 10, 2011, **MOHAMMED** caused to be sent a Western Union wire transfer to **SAID** in the amount of $2,941.09, which was intended to support al-Shabaab.

7.     On or about August 28, 2011, **MOHAMMED** caused to be sent a Western Union wire transfer to **SAID** in the amount of $1,926.35, which was intended to support al-Shabaab.

8.     On or about September 13, 2011, **MOHAMMED** caused to be sent a Western Union wire transfer to **SAID** in the amount of $1,013.09, which was intended to support al-Shabaab.

9.      On or about April 18, 2012, **MOHAMMED** contacted the OCE over the Internet and stated that he would donate money to mujahideen from Iraq operating in Syria for the purpose of purchasing weapons and recruiting personnel.

10.     On or about May 5, 2012, **MOHAMMED** contacted the OCE over the Internet and asked how he should send the money intended to support mujahideen from Iraq operating in Syria.

11.     On or about May 12, 2012, **MOHAMMED** caused to be sent a Western Union wire transfer to the OCE in the amount of $1,266.56, which was intended to support mujahideen from Iraq operating in Syria.

12.     On or about May 13, 2012, **MOHAMMED** contacted the OCE over the Internet and stated that he had sent the Western Union wire transfer in the amount of $1,266.56 and that the money could be used to purchase weapons, including grenade launchers, to support mujahideen from Iraq operating in Syria.

13.     On or about May 18, 2012, **MOHAMMED** contacted the OCE over the Internet and stated that he wanted to send more money to support al-Qa'ida and AQI/al-Nusrah Front and that he would send the same amount each month.

14.     On or about May 30, 2012, **MOHAMMED** contacted the OCE over the Internet and stated that he was asking around for recruits to join the mujahideen affiliated with AQI/al-Nusrah Front.

15.     On or about June 3, 2012, **MOHAMMED** contacted the OCE over the Internet and stated that he had spoken to **SAID**, who had two recruits who wanted to join the mujahideen affiliated with AQI/al-Nusrah Front.

16.     On or about June 6, 2012, **MOHAMMED** caused to be sent a Western Union wire transfer to the OCE in the amount of $1,637.07, which was intended to support al-Qa'ida through AQI/al-Nusrah Front.

17.     On or about June 6, 2012, **MOHAMMED** contacted the OCE over the Internet, confirmed that **SAID** still had two or three al-Shabaab veterans for AQI/al-Nusrah Front, and stated that he had sent the Western Union wire transfer in the amount of $1,637.07.

18.     On or about June 21, 2012, **MOHAMMED** contacted the OCE over the Internet and stated that he had spoken to **SAID**, that the recruits for AQI/al-Nusrah Front were ready, and that he would have **SAID** contact the OCE about them.

19.     On or about June 25, 2012, **MOHAMMED** contacted the OCE over the Internet, stated that **SAID** was also online, and provided the OCE with **SAID**'s Internet user name so that they could make contact.

20.     On or about July 1, 2012, **SAID** contacted the OCE over the Internet and stated that he had recruited S.K., an individual in Saudi Arabia described as an al-Qa'ida associate, who wanted to join the mujahideen affiliated with AQI/al-Nusrah Front.

21.     On or about July 2, 2012, **MOHAMMED** contacted the OCE over the Internet and asked about the recruits whom **SAID** had stated were in Kenya.

22.     On or about July 3, 2012, **MOHAMMED** caused to be sent a Western Union wire transfer to the OCE in the amount of $1,626.49, which was intended to support al-Qa'ida through AQI/al-Nusrah Front.

23.     On or about July 4, 2012, **SAID** contacted the OCE over the Internet and stated that he had recruited more individuals to join the mujahideen affiliated with AQI/al-Nusrah Front and that he would like to send two such recruits as soon as possible.

24.     On or about July 4, 2012, **MOHAMMED** contacted the OCE over the Internet, and stated that he had enlisted an individual, A.B., described as a Libyan resident who supports the "mujahideen all over," to send money and recruits to AQI/al-Nusrah Front and that he had sent the Western Union wire transfer in the amount of $1,626.49.

25.     On or about July 10, 2012, **SAID** contacted the OCE over the Internet and made plans to obtain passports and other travel documents for the two additional recruits who wanted to join the mujahideen affiliated with AQI/al-Nusrah Front.

26.     On or about July 23, 2012, **SAID** contacted the OCE over the Internet and provided information on one of the recruits, S.M., described as the perpetrator of a grenade attack on a bar in Kenya, so that the OCE could obtain travel documents for him.

27.     On or about July 25, 2012, **SAID** contacted the OCE over the Internet and provided the image of the passport of one of the recruits, S.O., described as a trained al-Shabaab fighter, so that the OCE could obtain additional travel documents for him.

28.     On or about July 25, 2012, **MOHAMMED** contacted the OCE over the Internet and approved of using the money from certain wire transfers to fund an al-Qa'ida terrorist attack on United States citizens or the United Nations.

29.     On or about August 1, 2012, **MOHAMMED** caused to be sent a Western Union wire transfer to the OCE in the amount of $1,493.17, which was intended to support al-Qa'ida.

30.     On or about August 1, 2012, **MOHAMMED** contacted the OCE over the Internet and stated that he had sent the Western Union wire transfer in the amount of $1,493.17.

31.     On or about August 1, 2012, **SAID** contacted the OCE over the Internet and provided instructions on obtaining the image of the passport of the recruit, S.M., described as the perpetrator of the grenade attack on a bar in Kenya, so that the OCE could obtain additional

travel documents for him, and informed the OCE that he had located another recruit who had fought for al-Shabaab and who wanted to join the mujahideen affiliated with AQI/al-Nusrah Front.

33. On or about August 10, 2012, **SAID** contacted the OCE over the Internet and stated that he would send recruits who had Western passports to the OCE so they could travel back to their homelands and carry out al-Qa'ida terrorist attacks.

33. On or about August 11, 2012, **MOHAMMED** contacted the OCE over the Internet and asked if the Western Union wire transfer in the amount of $1,493.17 had been received.

34. On or about August 16, 2012, **SAID** contacted the OCE over the Internet and stated that he was waiting for instructions from the OCE about where to send the recruits with Western passports for the purpose of carrying out al-Qa'ida terrorist attacks.

35. On or about August 17, 2012, **SAID** contacted the OCE over the Internet and provided the image of the passport of one of the recruits, M.N., described as a trained al-Shabaab fighter, so that the OCE could obtain additional travel documents for him.

36. On or about August 22, 2012, **SAID** contacted the OCE over the Internet and they made plans to move the recruits by boat from a coastal town in Somalia to the front lines of the Syrian conflict.

37. On or about September 12, 2012, **MOHAMMED** caused to be sent a Western Union wire transfer to the OCE in the amount of $1,433.14, which was intended to support al-Qa'ida through AQI/al-Nusrah Front.

38.     On or about September 12, 2012, **MOHAMMED** contacted the OCE over the Internet, and informed the OCE that he had sent the Western Union wire transfer in the amount of $1,433.14, which was intended to support al-Qa'ida through AQI/al-Nusrah Front.

39.     On or about September 27, 2012, **MOHAMMED** contacted the OCE over the Internet, and after the OCE stated that a terrorist attack was being planned to retaliate for the death of Anwar al-Awlaki, a radical al-Qa'ida cleric who was killed in a United States missile strike, **MOHAMMED** agreed to send money to support that operation.

40.     On or about October 5, 2012, **MOHAMMED** caused to be sent a Western Union wire transfer to the OCE in the amount of $1,493.21, which was intended to support al-Qa'ida.

41.     On or about November 3, 2012, **MOHAMMED** contacted the OCE over the Internet, and after the OCE stated that he must make a payoff to hide the fact that S.M., one of **SAID**'s recruits, is wanted by the Kenyan authorities, **MOHAMMED** agreed that his next wire transfer could be used for that purpose.

42.     On or about November 4, 2012, **MOHAMMED** caused to be sent a Western Union wire transfer to the OCE in the amount of $1,493.09, which was intended to support al-Qa'ida through AQI/al-Nusrah Front.

43.     On or about December 8, 2012, **MOHAMMED** contacted the OCE over the Internet, and discussed the fact that a purported associate of the OCE could meet **MOHAMMED** later that month to receive additional funds, which were intended to support AQI/al-Nusrah Front.

44.     On or about December 15, 2012, **MOHAMMED** met in person with the purported associate of the OCE, and delivered to him 14,400 Saudi Arabian riyals ("SAR") in Saudi Arabia currency, which was intended to support AQI/al-Nusrah Front.

45.     On or about December 31, 2012, **SAID** contacted the OCE over the Internet and informed him that he (**SAID**) would soon be traveling, so that if the OCE spoke to **MOHAMMED**, the OCE should tell him to send the money, which was intended to support al-Shabaab.

46.     On or about January 25, 2013, **SAID** contacted the OCE, whom he believed to be **MOHAMMED**, over the Internet and solicited money to pay the rent for fighters who were in Kenya on the command of Abu Zubeir, the "emir" or leader of al-Shabaab.

47.     On or about February 3, 2013, **SAID** contacted the OCE over the Internet and stated that he may have two new recruits with good passports who were looking for a front.

48.     On or about February 5, 2013, **SAID** contacted the OCE over the Internet and stated that he had a recruit who would be willing to conduct a martyrdom operation within the United States and be like one of "the 19."

All in violation of Title 18, United States Code, Section 2339B(a)(1).

## COUNTS 2-8

### Attempting to Provide Material Support to
### a Foreign Terrorist Organization
### (al-Shabaab)
### (18 U.S.C. § 2339B(a)(1))

Paragraphs 1-12 of this Indictment are re-alleged and incorporated herein by reference.

On or about the dates set forth below, at places outside the United States, that is, the Kingdom of Saudi Arabia and the Republic of Kenya, with Miami-Dade County, in the Southern District of Florida, being the district where a defendant was first brought, the defendants,

**GUFRAN AHMED KAUSER MOHAMMED,**
**a/k/a "Nasr,"**
**a/k/a "AuthenticTauheed1,"**
**a/k/a "NasrullahiKareeb,"**
**a/k/a "NasrullahiQareeb,"**

**a/k/a "Kauser Mohammed,"**
**a/k/a "csitcr,"**
**a/k/a "muwahidone1," and**
**MOHAMED HUSSEIN SAID,**
**a/k/a "Bill,"**
**a/k/a "Billph86,"**
**a/k/a "Mohammed Salem bin Abdisheikh,"**
**a/k/a "Mohamed Hussein,"**
**a/k/a "Abdul-Rahman Abdul Rahim,"**
**a/k/a "Tibyan,"**

did attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b)(1), including but not limited to currency, monetary instruments, and financial services, that is, Western Union wire transfers, to a Foreign Terrorist Organization, that is, al-Shabaab, knowing that al-Shabaab has engaged and engages in terrorist activity, as defined in Title 8, United States Code, Section 1182(a)(3)(B), as follows:

| Count | Date | Amount | Sender Name | Recipient Name |
|---|---|---|---|---|
| 2 | June 7, 2011 | $2,062.55 | Abdulhameed Mohammed Borae | Mohammed Hussein |
| 3 | June 12, 2011 | $799.97 | Udairaj Maurya | Selma Ahmic |
| 4 | July 9, 2011 | $2,182.55 | Abdulhameed Mohammed Borae | Selma Ahmic |
| 5 | July 13, 2011 | $746.60 | Udairaj Maurya | Selma Ahmic |
| 6 | August 10, 2011 | $2,941.09 | Abdulhamid Mohd Hussein Boraei | Selma Ahmic |
| 7 | August 28, 2011 | $1,926.35 | Udairaj Maurya | Selma Ahmic |
| 8 | September 13, 2011 | $1,013.09 | Udairaj Maurya | Selma Ahmic |

All in violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

## COUNTS 9-15

**Attempting to Provide Material Support to
a Foreign Terrorist Organization
(al-Qa'ida and AQI/al-Nusrah Front)
(18 U.S.C. § 2339B(a)(1))**

Paragraphs 1-12 of this Indictment are re-alleged and incorporated herein by reference.

On or about the dates set forth below, at a place outside the United States, that is, the

Kingdom of Saudi Arabia, with Miami-Dade County, in the Southern District of Florida, being

the district where the defendant was first brought, the defendant,

**GUFRAN AHMED KAUSER MOHAMMED,**
**a/k/a "Nasr,"**
**a/k/a "AuthenticTauheed1,"**
**a/k/a "NasrullahiKareeb,"**
**a/k/a "NasrullahiQareeb,"**
**a/k/a "Kauser Mohammed,"**
**a/k/a "csitcr,"**
**a/k/a "muwahidone1,"**

did attempt to provide material support and resources, as defined in Title 18, United States Code,

Section 2339A(b)(1), including but not limited to currency, monetary instruments, and financial

services, that is, Western Union wire transfers and a hand-delivery, to a Foreign Terrorist

Organization, that is, al-Qa'ida and AQI/al-Nusrah Front, knowing that al-Qa'ida and AQI/al-

Nusrah Front have engaged and engage in terrorist activity, as defined in Title 8, United States

Code, Section 1182(a)(3)(B), as follows:

| Count | Date | Amount | Sender Name | Recipient Name |
|-------|------|--------|-------------|----------------|
| 9 | June 6, 2012 | $1,637.07 | Alexander M. Sampang | OCE |
| 10 | July 3, 2012 | $1,626.49 | Lolita T. Zabate | OCE |
| 11 | August 1, 2012 | $1,493.17 | Khokon Mohammed Dula | OCE |
| 12 | September 12, 2012 | $1,433.14 | Sagir Hussain | OCE |

| 13 | October 5, 2012 | $1,493.21 | Mohammed Khadeeruddin | Malcolm Alexander |
| 14 | November 4, 2012 | $1,493.09 | Bernardo Jr. T. Delmar | Malcolm Alexander |
| 15 | December 15, 2012 | 14,400SAR | Gufran Mohammed | Purported OCE Associate |

All in violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations contained in Counts 1-15 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures of property, in which one or more of the Defendants has an interest, to the United States.

2.      The violations of Title 18, United States Code, Section 2339B(a)(1), alleged in Counts 1-15 of this Indictment are Federal crimes of terrorism, as defined in Title 18, United States Code, Section 2332b(g)(5), against the United States, citizens and residents of the United States, and their property.

3.      Upon conviction of any of the offenses in violation of Title 18, United States Code, Section 2339B(a)(1), alleged in Counts 1-15 of this Indictment, the Defendants convicted of said offenses shall forfeit to the United States all right, title, and interest in all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 2339B(a)(1), or a conspiracy to commit such an offense, and all assets, foreign or domestic:

        a.      of any individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism against the United States, citizens or residents of the

United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization;

        b.      acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism against the United States, citizens or residents of the United States, or their property;

        c.      derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism against the United States, citizens or residents of the United States, or their property; or

        d.      of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism against any international organization or against any foreign Government.

      4.      The property subject to forfeiture includes but is not limited to the following, set forth in approximate amounts:

        a.      $2,062.55 involved in the violation on or about June 7, 2011;

        b.      $799.97 involved in the violation on or about June 12, 2011;

        c.      $2,182.55 involved in the violation on or about July 9, 2011;

        d.      $746.60 involved in the violation on or about July 13, 2011;

        e.      $2,941.09 involved in the violation on or about August 10, 2011;

        f.      $1,926.35 involved in the violation on or about August 28, 2011;

        g.      $1,013.09 involved in the violation on or about September 13, 2011;

        h.      $1,266.56 involved in the violation on or about May 12, 2012;

        i.      $1,637.07 involved in the violation on or about June 6, 2012;

        j.      $1,626.49 involved in the violation on or about July 3, 2012;

k.      $1,493.17 involved in the violation on or about August 1, 2012;

l.      $1,433.14 involved in the violation on or about September 12, 2012;

m.      $1,493.21 involved in the violation on or about October 5, 2012;

n.      $1,493.09 involved in the violation on or about November 4, 2012;

o.      14,400SAR and one (1) gold bar of 100 grams involved in the violation on or about December 15, 2012; and

p.      one (1) $400 VISA gift card.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 981(a)(1)(G), and the procedures set forth in Title 21, United States Code, Section 853, made applicable through Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BRIAN K. FRAZIER
ASSISTANT UNITED STATES ATTORNEY

JOLIE F. ZIMMERMAN
TRIAL ATTORNEY, COUNTER-TERRORISM SECTION
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

**GUFRAN AHMED KAUSER MOHAMMED**
and
**MOHAMED HUSSEIN SAID,**

Defendants.
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division:** (Select One)

| | |
|---|---|
| **X** Miami | ____ Key West |
| ____ FTL | ____ WPB ____ FTP |

New Defendant(s)          Yes ____ No ____
Number of New Defendants  ____
Total number of counts    ____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No)     **No**
    List language and/or dialect     _____

4.  This case will take     **30**     days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                          (Check only one)

| I | 0 to 5 days | ____ | Petty | ____ |
|---|---|---|---|---|
| II | 6 to 10 days | ____ | Minor | ____ |
| III | 11 to 20 days | ____ | Misdem. | ____ |
| IV | 21 to 60 days | **X** | Felony | **X** |
| V | 61 days and over | ____ | | |

6.  Has this case been previously filed in this District Court? (Yes or No)     **No**
    If yes:
    Judge: _____     Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?     (Yes or No)     ____
    If yes:
    Magistrate Case No.     _____
    Related Miscellaneous numbers:     _____
    Defendant(s) in federal custody as of     _____
    Defendant(s) in state custody as of     _____
    Rule 20 from the     _____     District of _____

    Is this a potential death penalty case? (Yes or No)     **No**

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?     ____ Yes     **X**     No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?     ____ Yes     **X**     No

_____
BRIAN K. FRAZIER
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500476

\*Penalty Sheet(s) attached

REV 4/8/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>MOHAMED HUSSEIN SAID</u>

**Case No**:_____

Count #: 1

<u>Conspiring to Provide Material Support to a Foreign Terrorist Organization</u>

<u>Title 18, United States Code, Section 2339B(a)(1)</u>

**\* Max. Penalty**: 15 Years' Imprisonment

Counts #: 2-8

<u>Attempting to Provide Material Support to a Foreign Terrorist Organization</u>

<u>Title 18, United States Code, Section 2339B(a)(1)</u>

**\*Max. Penalty:** 15 Years' Imprisonment

Counts #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **GUFRAN AHMED KAUSER MOHAMMED**

**Case No**:

Count #: 1

Conspiring to Provide Material Support to a Foreign Terrorist Organization

Title 18, United States Code, Section 2339B(a)(1)

**\* Max. Penalty**: 15 Years' Imprisonment

Counts #: 2-15

Attempting to Provide Material Support to a Foreign Terrorist Organization

Title 18, United States Code, Section 2339B(a)(1)

**\*Max. Penalty**: 15 Years' Imprisonment

Counts #:



**\*Max. Penalty**:

Count #:



**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**