UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20364-CR-UNGARO/Torres

UNITED STATES OF AMERICA

v.

GUFRAN AHMED KAUSER MOHAMMED,
    a/k/a "Nasr,"
    a/k/a "AuthenticTauheed1,"
    a/k/a "NasrullahiKareeb,"
    a/k/a "NasrullahiQareeb,"
    a/k/a "Kauser Mohammed,"
    a/k/a "csitcr,"
    a/k/a "muwahidone1,"

                    Defendant.
_____/

## FACTUAL PROFFER

If this case were to proceed to trial, the government would prove the following facts beyond a reasonable doubt:

Defendant **GUFRAN MOHAMMED** ("**MOHAMMED**") is a naturalized United States citizen who was living in Saudi Arabia at times pertinent to this case. **MOHAMMED** solicited information over the Internet about supporting the al-Shabaab terrorist group and sent Western Union wire transfers to an individual in Kenya, **MOHAMMED**'s co-defendant in this case, Mohamed Hussein Said ("Said"), who claimed to have terrorist links, for the purpose of supporting that organization. **MOHAMMED** further sent Western Union wire transfers to an FBI Online Covert Employee ("OCE") who was posing as a terrorist fundraiser, recruiter, and supplier, for the purpose of supporting the al-Qa'ida and al-Qa'ida in Iraq/al-Nusrah Front terrorist groups. **MOHAMMED** introduced the OCE to Said for the purpose of supporting these same

two organizations, and Said, with **MOHAMMED**'s continued assistance, endeavored to do so.

Each of the three main terrorist groups at issue in this case—al-Qa'ida, al-Shabaab, and al-Qa'ida in Iraq—retained, at the time of the charged conduct, a separate designation under United States law as a Foreign Terrorist Organization ("FTO"). The name al-Nusrah Front was added as an alias to the preexisting designation of al-Qa'ida in Iraq on December 11, 2012, before the conduct charged in this case ended. Al-Qa'ida is a global Islamic terrorist group; al-Shabaab is the al-Qa'ida affiliate in East Africa while al-Qa'ida in Iraq/al-Nusrah Front was, at the time of the charged conduct, the main al-Qa'ida affiliate in Syria. Based on their designation as FTOs, conspiring to provide material support and resources to these groups violates 18 U.S.C. § 2339B(a)(1). Providing material support and resources is defined under the statute to include providing currency, monetary instruments, financial services, and personnel.

The core of this case involves Western Union wire transfers that **MOHAMMED** sent through Said for the support of al-Shabaab, and that **MOHAMMED** sent to the OCE for the support al-Qa'ida and al-Qa'ida in Iraq/al-Nusrah Front. **MOHAMMED** sent funds to Said starting in June 2011 and sent funds to the OCE starting in May 2012. Both sets of transfers continued throughout the case. The total amount of documented wire transfers was approximately $22,100, including seven transfers to Said for al-Shabaab and seven transfers to the OCE for al-Qa'ida and al-Qa'ida in Iraq/al-Nusrah Front. According to Western Union records, **MOHAMMED** used other individuals to send the transfers. The names of two of these senders were later discovered in **MOHAMMED**'s iPhone contacts list. **MOHAMMED** also exchanged text messages with one of the senders proving he was the source of the funds. Said used his wife, and twice went himself, to pick up the transfers sent to him by **MOHAMMED** and his associates.

The government would prove the illegal purpose of these donations through

2

MOHAMMED's and Said's communications at the time as well as what MOHAMMED and Said later told the OCE about themselves and their activities. MOHAMMED met Said in Saudi Arabia in May 2011, and there MOHAMMED provided Said with funds for al-Shabaab. On June 6, 2011, Said sent an encrypted email to MOHAMMED that stated, "I sent and it was distributed amng mujahideen." Later that day, MOHAMMED replied with his own encrypted email, "I am sendin this week more inshallah [God willing]." MOHAMMED did send further donations through Western Union. One was sent to Said on June 7, 2011, for approximately $2,060, and another on June 12, 2011, for approximately $800. MOHAMMED and Said also exchanged other encrypted communications about additional wire transfers, including the Western Union number, the sender's name, and the amount. Said later told the OCE the name of one of MOHAMMED's senders, a name that appears in Western Union records, in MOHAMMED's iPhone contacts list, and in other electronic media belonging to MOHAMMED.

From March 2012 to January 2013, the OCE participated in dozens of online exchanges with MOHAMMED, and after June 2012, when MOHAMMED introduced Said, the OCE participated in dozens more online exchanges with Said. Many of these exchanges confirmed that MOHAMMED and Said had been supporting al-Shabaab. This support continued throughout the charged timeframe. On November 14, 2012, Said told the OCE that MOHAMMED had lost contact with another "brother" to whom he sends money and that Said was helping reestablish contact, indicating that MOHAMMED was still financing al-Shabaab and that Said was still helping him. Even later, on December 21, 2012, Said contacted the OCE and stated that he (Said) would soon be traveling, so if the OCE spoke to MOHAMMED, the OCE should tell him to send the money for al-Shabaab.

MOHAMMED and the OCE used a communication technique called "join.me," which

3

enables two or more computer users to share one computer screen.  In these join.me sessions, **MOHAMMED** and the OCE would communicate by typing on the same word processing document.  **MOHAMMED** and Said had earlier adopted this technique to conceal their communications about al-Shabaab from law enforcement, and thinking it successful, **MOHAMMED** encouraged the OCE to use it as well.

From May 2012 to November 2012, using this and other communication techniques, **MOHAMMED** attempted to send money to al-Qa'ida and al-Qa'ida in Iraq/al-Nusrah Front through the OCE, whom **MOHAMMED** believed to be affiliated with those groups.  In addition to contributions for general purposes, **MOHAMMED** specifically directed that certain of his wire transfers be used to purchase weapons or to funds specific terrorist operations.  **MOHAMMED** also continued to direct his funds in a way that coordinated with Said and his efforts to recruit experienced al-Qa'ida and al-Shabaab fighters to engage in violent jihad in Syria and to otherwise support them while awaiting deployment to the front lines.

In terms of weapons, on April 18, 2012, **MOHAMMED** contacted the OCE and stated that he would donate money to the mujahideen from Iraq operating in Syria so they could purchase weapons and recruit personnel.  On May 13, 2012, **MOHAMMED** stated that his recent Western Union wire transfer in the amount of approximately $1,270 could be used for that purpose, including for the acquisition of grenade launchers.  On July 25, 2012, **MOHAMMED** contacted the OCE and approved of using money from certain of his wire transfers to fund an al-Qa'ida attack on United States citizens or the United Nations.  On September 27, 2012, after the OCE informed **MOHAMMED** that a terrorist attack was being planned to retaliate for the death on Anwar al-Awlaki, a radical al-Qa'ida cleric killed in a United States missile strike, **MOHAMMED** agreed to send money for that operation too.  **MOHAMMED** continued to send

wire transfers subsequent to this conversation.

**MOHAMMED** also directed his efforts toward recruitment, and here closely worked with Said to coordinate efforts.   On May 30, 2012, **MOHAMMED** contacted the OCE and stated that he was asking around for recruits to join the mujahideen affiliated with al-Qa'ida in Iraq/al-Nusrah Front.   On June 6, 2012, **MOHAMMED** told the OCE that Said had two or three al-Shabaab veterans for al-Qa'ida in Iraq/al-Nusrah Front.   On June 21, 2012, **MOHAMMED** contacted the OCE and relayed news from Said that the recruits were ready and that Said would contact the OCE directly about them.   The OCE and Said soon established contact through **MOHAMMED** and began discussing multiple identifiable recruits with al-Qa'ida and al-Shabaab affiliations and how to move them to Syria.

After introducing the OCE to Said, **MOHAMMED** continued to support recruitment for al-Qa'ida in Iraq/al-Nusrah Front and al-Shabaab.   For example, on July 4, 2012, **MOHAMMED** contacted the OCE to state that he had solicited a Libyan resident and known mujahideen supporter to send money and recruits to al-Qa'ida in Iraq/al-Nusrah Front.   On November 3, 2012, after the OCE stated that he needed money to hide one of Said's recruits from the Kenyan authorities, **MOHAMMED** agreed that his next wire transfer could be used for that purpose.

Some of the wire transfers **MOHAMMED** intended for the direct benefit of al-Qa'ida, but he also attempted indirect support though its affiliates.   For example, **MOHAMMED** was sending funds to the OCE for al-Qa'ida in Iraq/al-Nusrah Front, which at the time was al-Qa'ida in Syria, and for al-Shabaab, which was then, and remains now, al-Qa'ida in Somalia.   And Said's recruitment efforts on behalf of the OCE, which **MOHAMMED** initiated and facilitated, involved veteran al-Qa'ida and al-Shabaab fighters, such that helping them, as al-Qa'ida personnel, amounted to helping al-Qa'ida itself.

On December 15, 2012, in Saudi Arabia, **MOHAMMED** met in person with a purported associate of the OCE who was also posing as an al-Qa'ida in Iraq/al-Nusrah Front facilitator. This individual was in reality an FBI Undercover Employee ("UCE").  At that meeting, **MOHAMMED** provided the UCE with 14,400 Saudi Arabian riyals (at the time approximately $3,840) for the support of al-Qa'ida in Iraq/al-Nusrah Front.  **MOHAMMED** also gave the UC one gold bar weighing 100 grams (at the time approximately $5,400) for the support of the Afghan Taliban, another group that commits terrorist acts.  Moreover, **MOHAMMED** informed the UCE at the meeting that he used a Virtual Private Network ("VPN") to hide on-line electronic communications.  The VPN allowed **MOHAMMED** to hide his location and Internet activity from law enforcement and security services, and he was later found to have used this technique throughout the course of his illegal conduct.

**MOHAMMED** was taken into FBI custody in Saudi Arabia on August 7, 2013, for the offenses charged in the Indictment.  **MOHAMMED** was first brought into the United States when he and the arresting FBI agents landed together at Miami International Airport in the Southern District of Florida.

The total value of monetary support that **MOHAMMED** conspired to provide to various terrorist organizations, which would be proven at trial, is more than $30,000, including the Western Union wire transfers, the Saudi Arabian riyals, and the gold bar.

A list of all wire transfers from **MOHAMMED** to Said that would be proven at trial is submitted as Exhibit A to this proffer.  A list of all wire transfers from **MOHAMMED** to the OCE that likewise would be proven at trial is submitted as Exhibit B to this proffer.

Date: 7/11/14

By: _____
BRIAN K. FRAZIER
ASSISTANT UNITED STATES ATTORNEY

Date: 7/11/14

_____
HELAINE BATOFF, ESQ.
ATTORNEY FOR DEFENDANT

Date: 7/11/14

_____
GUFRAN AHMED KAUSER MOHAMMED
DEFENDANT

7

## EXHIBIT A

| Date | Amount | Sender Name | Recipient Name |
|---|---|---|---|
| June 7, 2011 | $2,062.55 | Abdulhameed Mohammed Borae | Mohammed Hussein |
| June 12, 2011 | $799.97 | Udairaj Maurya | Selma Ahmic |
| July 9, 2011 | $2,182.55 | Abdulhameed Mohammed Borae | Selma Ahmic |
| July 13, 2011 | $746.60 | Udairaj Maurya | Selma Ahmic |
| August 10, 2011 | $2,941.09 | Abdulhamid Mohd Hussein Boraei | Selma Ahmic |
| August 28, 2011 | $1,926.35 | Udairaj Maurya | Selma Ahmic |
| September 13, 2011 | $1,013.09 | Udairaj Maurya | Selma Ahmic |

## EXHIBIT B

| Date | Amount | Sender Name | Recipient Name |
|---|---|---|---|
| May 12, 2012 | $1,266.56 | Khalid Prevez Miran Baksh | OCE |
| June 6, 2012 | $1,637.07 | Alexander M. Sampang | OCE |
| July 3, 2012 | $1,626.49 | Lolita T. Zabate | OCE |
| August 1, 2012 | $1,493.17 | Khokon Mohammed Dula | OCE |
| September 12, 2012 | $1,433.14 | Sagir Hussain | OCE |
| October 5, 2012 | $1,493.21 | Mohammed Khadeeruddin | Malcolm Alexander |
| November 4, 2012 | $1,493.09 | Bernardo Jr. T. Delmar | Malcolm Alexander |

2