```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
              Case No. 13-20364-Cr-UNGARO

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
     -v-                        )
                                )
GUFRAN AHMED KAUSER MOHAMMED,   )
                                ) Miami, Florida
          Defendant.            ) December 3, 2014
                                ) 11:20 a.m.
```

VOLUME 2 - Pages 1-18

TRANSCRIPT OF SENTENCING PROCEEDINGS

BEFORE THE HONORABLE URSULA UNGARO

U.S. DISTRICT JUDGE

APPEARANCES:

For the Government        BRIAN K. FRAZIER and RICARDO A. DEL TORO
                          Assistant U.S. Attorneys
                          99 Northeast 4th Street
                          Miami, Florida  33132-2111

For the Defendant         HELAINE B. BATOFF and SOWMYA BHARATHI
                          Assistant Federal Public Defenders
                          150 West Flagler Street
                          Miami, Florida  33130

REPORTED BY:              WILLIAM G. ROMANISHIN, RMR, FCRR, CRR
(305) 523-5558            Official Court Reporter
                          400 North Miami Avenue
                          Miami, Florida  33128

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

1  (Call to order of the Court)
2  THE COURT: The case before the Court is the United
3  States versus Gufran Ahmed Mohammed -- this is a continuation
4  of the sentencing we started some time ago -- 13-20364.
5  Who's here for the United States?
6  MR. DEL TORO: Good morning, Your Honor. Rick
7  Del Toro and Brian Frazier on behalf of the United States
8  along with Special Agent Justin Akers of the FBI.
9  THE COURT: Fine.
10  And for the defense.
11  MS. BATOFF: Good afternoon, Your Honor. Helaine
12  Batoff and Sowmya Bharathi from the Federal Public Defender's
13  office on behalf of Gufran Mohammed, who's present before the
14  Court.
15  THE COURT: And Mr. Mohammed is present.
16  Who's here for Probation?
17  PROBATION OFFICER FELASCO: Good morning, Your
18  Honor. Thomas Felasco from the probation office.
19  THE COURT: Okay. Thank you.
20  I remember where we left off, but I want to backtrack
21  for a moment. I had my office send you some statistics, both
22  local and national, that we were able to obtain for these
23  material support of terrorism cases, and as a result of the
24  statistics I now have a question that maybe I should have
25  addressed earlier, because when I looked at the national

1  statistics, what was provided to me said the average guideline
2  minimum was 47 months, which sort of renders these statistics
3  irrelevant because the guideline minimum here is much higher
4  than that.
5          But then I thought to myself, well, maybe I should
6  try to understand better, because we really didn't have any
7  objections to the guideline calculation because of the agreed
8  upon sentence in the plea agreement, why the guideline minimum
9  here is as high as it is.
10         And so I went back to the presentence report and, you
11 know, I see that the base offense level at this point in
12 time -- maybe it was less at the time of these other cases --
13 is 26, I think.
14         MR. DEL TORO:  Yes.
15         THE COURT:  And then there's a two-level increase
16 because the defendant specifically directed the wire transfers
17 for the purchase of weapons or to commit, or assist in the
18 commission of, a violent act.
19         But then we got to paragraph 30 and I was unable to
20 identify, because of the way the statute is perhaps, the
21 specific federal crime of terrorism that's causing the
22 12-level bump up.
23         The guidelines say that "federal crime of terrorism"
24 has the same definition as in the statute.  But the statute is
25 quite complicated.  It's quite a laundry list of statutes.  So

1  I wasn't really clear as to what was causing the 12-level bump
2  up.
3           The guidelines say:  For the purposes of this
4  guideline, "federal crime of terrorism" has a meaning given
5  that term in 18 USC 2332b(g)(5).  And surely we're not double-
6  counting here.  It's not just providing material support or
7  conspiring to provide material support.  There's some separate
8  federal crime of terrorism that's causing the 12-level bump
9  up.
10          So Probation must have had some support or some idea
11 of what that crime was in order to impose this 12-level bump
12 up.  So what was it?
13          PROBATION OFFICER FELASCO:  Your Honor, can I have a
14 moment, please?
15          THE COURT:  Yes.
16          PROBATION OFFICER FELASCO:  Thank you.
17          MR. DEL TORO:  Judge, may I address it?
18          THE COURT:  Well, I'd like to know why Probation
19 included it.  I'd like to start there.  Why did Probation
20 include the 12-level bump up?
21          PROBATION OFFICER FELASCO:  Well, in this case the
22 defendant's actions were that he was promoting it.  He was
23 providing material support.
24          THE COURT:  But that's what he's charged with.  We
25 can't bump him up for that too.  So the statute has a laundry

1  list of the federal crimes of terrorism in it.  So I would
2  like to know what is the independent federal crime of
3  terrorism that is causing the 12-level bump up or did we just
4  parrot the United States.  But that doesn't sound like you,
5  Mr. Felasco.
6              PROBATION OFFICER FELASCO:  Yes, Your Honor.
7              THE COURT:  I know I caught by surprise.
8              PROBATION OFFICER FELASCO:  I apologize, Your Honor,
9  because I wasn't expecting this question.  But just give me
10 one moment.
11             THE COURT:  Okay.  Take your time.
12             MR. DEL TORO:  Judge, if I may help, it actually is
13 defined in the statute.
14             THE COURT:  Well, the statute is so long.
15             MR. DEL TORO:  Right.  And it can get lost in
16 2332b(g).
17             THE COURT:  Wait.  Hold on.
18             Okay.  I've got 2332b(g).
19             MR. DEL TORO:  And then you go down to (5), which
20 defines a federal crime of terrorism as -- and from (5) you go
21 to --
22             THE COURT:  Where?  Yes.  That's the question.
23             MR. DEL TORO:  Right.  From there you go to (B), "is
24 a violation of," and it's listed here, 2339B, near the end of
25 that long paragraph on the right side of the page.

1          THE COURT:  2339B.
2          MR. DEL TORO:  "Relating to providing material
3  support to terrorist organizations."
4          THE COURT:  So I don't get why that's not double-
5  counting.
6          MR. DEL TORO:  And let me explain why it's not,
7  Judge.
8          That guideline, Section 3A1.4(a), is an adjustment,
9  it's an enhancement, and it can apply to many different
10 crimes.  So it captured many different types of conduct.
11         But the reason it applies in this case is because
12 this is a terrorism case, and as a terrorism case, the
13 enhancement is applied by virtue of the nature of the crime
14 itself, because the enhancement can be applied to many
15 different offenses.
16         THE COURT:  So, in other words, you're saying that
17 for this particular crime, really, although the guidelines
18 don't refer to it this way, the base offense level is really
19 26 plus 12.
20         PROBATION OFFICER FELASCO:  That's correct.
21         THE COURT:  But that's not what the base offense
22 level is.  The base offense level is 26.  So I don't
23 understand why this isn't double-counting.  Maybe Probation
24 can help me.
25         PROBATION OFFICER FELASCO:  Your Honor, it falls

1  under like victim-related adjustments, Chapter 3 adjustments.
2  It's not under the specific guideline for the offense of
3  conviction.  It's a separate increase.  And when you go to
4  Chapter 3, because Chapter 3 enhancements are added after we
5  determine what the base offense level is and what the specific
6  offense characteristics are for the crime.
7       Then we go to Chapter 3 enhancements, which include
8  adjustments for role, adjustments for victims and also for
9  terrorism offenses, and it's a separate adjustment and there's
10 nothing that the Sentencing Commission says that we're not
11 supposed to apply it if the person is convicted of 18 USC
12 2339B and the guideline 5.3 is applied.  So it's not
13 considered double-counting.
14      For example, in firearm cases sometimes we can't
15 apply certain adjustments when a defendant is found guilty of
16 like 922(g) and we're supposed to apply another specific
17 offense characteristic.  There will be guidance by the
18 Sentencing Guidelines to not apply certain specific offense
19 characteristics.  But this does not give any direction in that
20 regard.
21      THE COURT:  But it doesn't say you should either,
22 right?
23      PROBATION OFFICER FELASCO:  True.
24      THE COURT:  It doesn't say you should, right?  So I
25 understand what you're saying about the structure of the

1 guidelines.  But, you know, without much greater opportunity
2 to reflect on this, I don't know that I agree.
3          What does the defense say about this?
4          MS. BATOFF:  Judge, because of the significant
5 benefit that Mr. Mohammed got in pleading guilty, we agreed as
6 part of the plea agreement in this case that --
7          THE COURT:  To cap the exposure.
8          MS. BATOFF:  Right.  That this enhancement would
9 apply.  We did agree to that in the plea agreement.  That was
10 a condition that we acquiesced to.
11          THE COURT:  I'm not really quarreling with the
12 guideline computation because of the agreed upon cap on the
13 sentence.  What I'm trying to do is place in context these
14 statistics that I got, the national statistics and the local
15 statistics, if you want to call them that -- they're hardly
16 statistics, anyhow, whatever they might be, the survey
17 results -- to see whether or not they have any relevance to
18 this sentencing.
19          So I understand what you're saying.  But at the same
20 time, I think that maybe there's more relevance than would
21 otherwise appear on their face because of the way the
22 guidelines have been calculated in this case.
23          MS. BATOFF:  Yes, Your Honor.
24          And what I will say is that in my survey of cases
25 that I did before filing the sentencing memorandum and then in

1  looking at the cases that Probation came up with and the cases
2  that the Sentencing Commission refers to -- I don't know
3  exactly which cases those are -- but there does not seem to be
4  a rhyme or reason as to why in certain cases this Section
5  3A1.4 enhancement applies.
6          THE COURT:  Right.  In fact, you are raising a very
7  good question, which is, if the average minimum guideline
8  sentence nationally has been 47 months, obviously, this
9  enhancement has not been applied nationally.
10         Did Probation make any inquiry into the
11 appropriateness of applying a guideline in light of other
12 cases in the nation?
13         PROBATION OFFICER FELASCO:  We didn't contemplate
14 that, Your Honor.
15         THE COURT:  Well, I'm very troubled by this actually.
16         MR. DEL TORO:  May I address a couple of points, Your
17 Honor?
18         My understanding from the response from the
19 Commission is that the average sentence was 79 months.
20         THE COURT:  Well, let me go back and look.
21         MR. DEL TORO:  The average sentence was 79 months.
22         THE COURT:  Okay.  That's fine.
23         MR. DEL TORO:  And the medium sentence of 57 months.
24         THE COURT:  I'm sorry.  Where do you see that?
25         MR. DEL TORO:  In the first paragraph, Judge Ungaro,

```
 1  the second-to-last sentence is:  The average sentence in all
 2  of these cases was 79 months with a median sentence of 57.
 3           THE COURT:  However, there are important differences
 4  across these 31 cases.  11 cases involve criminal history
 5  category 1 offenders, and then the table only deals with
 6  category 1 offenders.  The table says the average guideline
 7  minimum was 47 months.  And every one of these people was
 8  charged with providing material support to terrorist
 9  organizations or, I assume, conspiracy to do so.
10           So it seems obvious to me that in every one of these
11  cases -- not that there are a lot of them; there are 11 --
12  this enhancement was not applied and I'd like to know why.
13           MR. DEL TORO:  But it was applied in cases in this
14  district which we have talked about.  We talked briefly and
15  the Government filed a memorandum addressing some of those
16  cases.
17           Let me submit to the Court that the reason --
18           THE COURT:  But not in most of the cases.
19           MR. DEL TORO:  Well, in some of the cases.
20           THE COURT:  You know, I have the list.  We talked
21  about outliers last time and nobody had guidelines as high as
22  this defendant other than defendant Khan.
23           MR. DEL TORO:  Defendant Jiusi was as well -- or,
24  rather, Padilla was as well, although that involved additional
25  offenses.
```

```
 1            THE COURT:  Right.
 2            MR. DEL TORO:  Judge, let me just put into context I
 3   think what the guideline seeks to do and why we believe that
 4   there is no double-counting here.
 5            THE COURT:  I don't think we should get into this
 6   technical double-counting, not double-counting.  The fact of
 7   the matter is that in other districts, obviously, the
 8   enhancement has not been applied.
 9            Wouldn't you agree, Mr. Felasco, based on these
10   statistics?
11            PROBATION OFFICER FELASCO:  Your Honor, it's hard to
12   tell, I mean, without seeing all the presentence reports on
13   every single case, and I'm not sure if it was overlooked.  I'm
14   not sure if these reduced sentences are just based on
15   variances imposed by the courts.  I mean, I'm not sure of the
16   circumstances of the other cases.
17            MR. DEL TORO:  Or downward departures.
18            THE COURT:  Well, I don't have any information
19   suggesting they're downward departures.
20            MR. DEL TORO:  Your Honor, may I address that that's
21   the reason why looking at raw numbers is really meaningless in
22   terms of figuring out what an appropriate sentence --
23            THE COURT:  Well, it does say average guideline
24   minimum.  So, if it says average guideline minimum, there's no
25   5K or Rule 35.  Average guideline minimum, 47 months.
```

1  Obviously, this enhancement was not being applied in these 11
2  cases.
3          In how many of the cases in this district was this
4  enhancement applied?
5          Ms. Batoff.
6          MS. BATOFF:  Judge, I can tell you it was not applied
7  in Hupper, which is one of the cases I cited in my memorandum
8  of law, and I think it's pretty obvious that it was not
9  applied in the cases involving the FARC that the Government
10 cites in their memorandum.
11         MR. DEL TORO:  It was applied, I believe, in
12 Batiste.  It was applied in Hafiz Khan.
13         The Government does make a distinction between those
14 cases, the FARC cases, the AUC cases.  In those cases the
15 defendants were involved generally in a sting operation
16 relating to terrorist --
17         THE COURT:  Well, tell me in how many cases in this
18 district has this enhancement been applied and which cases.
19         MR. DEL TORO:  I know that it has been applied in
20 Batiste.  I know that it has been applied in Khan.  I know
21 that it was applied in Padilla.  Those are al-Qaeda or Jihadi
22 terrorist organization cases.  And that is the sharp
23 distinction, the sharp divide.  I think the big bridge between
24 these, there isn't one.
25         THE COURT:  But why would Probation apply it in some

1  cases and not in others when the language that you're relying
2  on would not make the distinction you're trying to make here,
3  or is Probation just a puppet of the U.S. Attorney's office?
4             MR. DEL TORO:  No, Judge.  In some cases they did --
5             THE COURT:  So I'd like to know from Probation why is
6  it being applied in some cases and not in others.
7             PROBATION OFFICER FELASCO:  Your Honor, I'm not
8  sure.  It's in a separate section of the guidelines manual.  I
9  don't want to assume, but maybe it was overlooked because it's
10 not one of the traditional specific offense characteristics.
11            THE COURT:  Or maybe somebody decided it was not
12 appropriate.  There are two sides to this possibility.
13            PROBATION OFFICER FELASCO:  Absolutely, Your Honor.
14            MR. DEL TORO:  And I think that the dividing line,
15 Judge, was the distinction between Jihadi terrorist groups --
16            THE COURT:  How can you speak for Probation or are
17 you saying Probation is your puppet?
18            MR. DEL TORO:  No, Judge.
19            THE COURT:  What are you saying?  I'm asking why did
20 Probation apply it in some cases and not in others, and you're
21 not in a position to answer that question.
22            MR. DEL TORO:  I can't, Judge.
23            THE COURT:  Right.
24            MR. DEL TORO:  I just want to answer the Court's
25 question as to the ultimate sentence, why it wasn't applied by

```
 1  the Court.  And what I'm trying to suggest to the Court is
 2  there is a sharp distinction between terrorist groups and
 3  terrorist groups, and al-Qaeda, al-Shabaab, al-Nusrah front,
 4  the Taliban, are distinctly --
 5           THE COURT:  We're not talking about the same thing
 6  right now.  All right.  We're just not having the same
 7  conversation.  I just would like to know why Probation applied
 8  this enhancement in some cases and not in others.
 9           And Probation is not in a position to answer that,
10  right?  You would need to do more research.
11           PROBATION OFFICER FELASCO:  Absolutely, Your Honor.
12           THE COURT:  Interesting.
13           Okay.  Well, I want to know the answer to this.  I
14  just cannot go forward without knowing the answer to this or
15  at least having a lot more information.
16           Yes, Ms. Batoff.
17           MS. BATOFF:  Judge, the information in the
18  Government's latest pleading is based almost entirely on
19  confidential presentence investigation reports that we do not
20  have access to without a court order from each of the courts
21  that presided over each of the cases.  So, if everyone is
22  going to go back and do research and try to figure this out, I
23  think that we will need to have access to the reports.
24           THE COURT:  Well, I think the first thing I'd like to
25  know from Probation is of the 11 cases that the Sentencing
```

1  Commission, or whoever, the AO was able to provide to me and
2  of the local cases, I'd like to have an identification of the
3  cases in which this enhancement was applied.  So let's first
4  identify the cases, and then from there let's have a status
5  conference and figure out where we should go from there.
6  Okay?
7           MS. BATOFF:  Yes, Your Honor.
8           THE COURT:  Okay.  So, how long is it going to take
9  you to do this?  It shouldn't take very long.  There are only
10 like 20 cases.
11          PROBATION OFFICER FELASCO:  Well, the local cases we
12 can find out right away.  The other stuff, it would depend on
13 the AO.  It just depends on how quickly the AO gets back to
14 us.
15          THE COURT:  Well, how about two weeks?
16          PROBATION OFFICER CONNIE GARCIA:  We should be able
17 to, Your Honor.  I spoke with the Sentencing Commission this
18 morning and inquired if there were any other concerns that the
19 Court had.
20          THE COURT:  Right.  So, you know, it could be that
21 I'm misreading these.  Maybe I'm misreading these statistics.
22 But this table says the minimum guideline sentence was 47
23 months.
24          Frankly, even if you just go by the base offense
25 level in this case plus the two-level enhancement, a 28 puts

```
 1  him at 78 to 97 months.  So I don't know where the 47 months
 2  is coming from.  Of course, a 12-level enhancement is a very
 3  substantial enhancement.  So that's why I'm focusing on the
 4  12-level enhancement.
 5           I want to understand what's going on here, why is
 6  this not getting applied, or let's identify the cases where it
 7  is being applied, and then we can talk about maybe
 8  similarities/dissimilarities.  But I'd like to know first in
 9  which cases was it applied.  Okay?
10           So, two weeks.  How about two weeks?
11           THE COURTROOM DEPUTY:  Eleven o'clock on December
12  17th.
13           THE COURT:  Okay?
14           PROBATION OFFICER FELASCO:  You wanted a list of the
15  cases --
16           THE COURT:  Right now I just want a list of the cases
17  in which it was applied.  All right?
18           PROBATION OFFICER FELASCO:  National and local.
19           THE COURT:  National and local, right.  And I'd like
20  the list earlier, you know, a couple days earlier, because
21  then maybe we can go online and find out some facts of these
22  cases.
23           MS. BATOFF:  Judge, the best way to see whether
24  Probation applied the enhancement is, of course, to see the
25  presentence investigation reports.
```

```
 1              THE COURT:  Well, I don't think that you need to
 2   mistrust the veracity of the probation office in providing a
 3   list of the cases in which the 12-point enhancement was
 4   applied.  Right now I just want a list.  If, let's say, out of
 5   a universe of 20 to 25 cases of people charged with conspiring
 6   to provide material support or providing material support the
 7   enhancement was only applied in four cases, I think there's a
 8   message in that, right?
 9              And then maybe we look at those four cases and see
10   what the facts are.  But I don't think we need to look at all
11   25 cases.  We need to know how many cases there are and what
12   the cases are, the names of the cases and the case numbers,
13   where the defendants were subjected to the 12-point
14   enhancement.  Okay?
15              MS. BATOFF:  And if Probation could provide the
16   parties with that list too, that would be helpful.
17              THE COURT:  Yes.  I want it provided to everyone.
18              PROBATION OFFICER FELASCO:  That's fine, Your Honor.
19              THE COURT:  I mean, maybe I misunderstand something
20   here.  Maybe it was applied in every case.
21              PROBATION OFFICER FELASCO:  No, I understand your
22   concern because of the guideline minimums, you're wondering
23   how they got to that minimum sentence.
24              THE COURT:  Yeah, I am wondering about this.  But I
25   don't want us to have to go into a full-scale exploration of
```

1  the guideline calculations in every one of these cases.  The
2  fact of the matter is a 12-point bump up is a significant bump
3  up.  So let's just focus on that 12-point bump up and try to
4  understand what's going on here, because it seems obvious to
5  me that it's not being applied in every case, if I'm reading
6  the table correctly, unless the information being provided is
7  incorrect.  Okay?
8          PROBATION OFFICER FELASCO:  Thank you, Your Honor.
9          THE COURT:  Okay.
10         MR. DEL TORO:  Your Honor, what is the status date
11 again?  I'm sorry.
12         THE COURT:  Kathryn, what is the status conference
13 date?
14         THE COURTROOM DEPUTY:  It is the 17th at 11:00.
15         THE COURT:  Okay.  December 17th at 11:00 a.m.
16         MR. DEL TORO:  Thank you, Judge.
17         THE COURT:  I'm sorry to throw this wrench into these
18 things, but I just personally cannot go forward without
19 satisfying myself to some degree about this.
20         MS. BATOFF:  Thank you, Judge.
21         (Recessed at 11:45 a.m.)
22     *     *     *     *     *     *     *     *     *     *

```
 1                  C E R T I F I C A T E
 2
 3        I certify that the foregoing is a correct transcript
 4   from the record of proceedings in the above-entitled matter.
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```