UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20364-CR-UNGARO

UNITED STATES OF AMERICA

v.

MOHAMED HUSSEIN SAID,

    Defendant.

_____/

DEFENDANT MOHAMED SAID'S MOTION TO SUPPRESS
INTERNET-CONNECTED DEVICE IDENTIFICATION
AND ANY WRITTEN OR ORAL STATEMENTS

    The defendant, **MOHAMED HUSSEIN SAID**, through his undersigned attorney, pursuant to the Fifth Amendment of the United States Constitution and Federal Rule of Criminal Procedure 41, respectfully files this Motion to Suppress two categories of evidence.

    First, Mr. Said moves the Court to suppress any evidence of pre-trial identification that relies on electronic mail ("Email") addresses and/or Internet Protocol ("IP") addresses to allegedly establish his identity and participation in this case.[1] Under a totality of circumstances standard, singular dependance upon such Internet-connected devices is inherently unreliable and thus, a violation of the Due Process Clause mandating suppression. *See Neil v. Biggers*, 409 U.S. 188 (1972)(out-of-court identification is inadmissible if under the totality of the circumstances the identification is unreliable); *Malibu Media v. John Doe*, No. 14-60259-UU, 2014 U.S. Dist. LEXIS 82480 (S.D.F.L. May 20, 2014)(geographical location of Internet-connected devices is not sufficiently reliable to establish identity and venue).

---

[1] To the extent that the twelve search warrants procured in relation to this case rely on similar Internet-connected devices to establish identity, Mr. Said moves to suppress any evidence obtained therefrom.

● Piñera-Vazquez Law Firm ●

Second, Mr. Said moves to suppress any and all statements obtained by the government at the time of his arrest. Due to the unique and coercive nature of Mr. Said's custody in Saudi Arabia and subsequent interrogation, any statements made were not voluntary and a violation of the Fifth Amendment.

Mr. Said requests that this Court schedule a formal evidentiary hearing to assess the reliability of the government's pre-trial identification of the defendant and to determine the voluntariness of any statement Mr. Said may have made upon being taken into custody.

## I. INTRODUCTION

Mohamed Hussein Said, a Kenyan national, is charged in an eight-count Indictment with providing material support to a foreign terrorist organization in violation of Title 18, United States Code, Section 2339B(a)(1). The genesis and development of this investigation took place outside the territory of the United States and over the Internet. Indeed, as established in the discovery produced by the government, any and all alleged criminal acts evidencing material support to a foreign terrorist organization occurred in Internet chat rooms.

There is no eye witness testimony, audio or video evidence connecting Mr. Said as the actual person participating in the incriminating Internet conversations or sitting behind a computer.[2] Moreover, no computers or electronic devices have been produced that allegedly belong or were used by Mr. Said. The government solely relies on unverified Email addressees and general IP addresses

---

[2]This is the critical evidentiary difference between defendant Mohammed and Mr. Said. As described in Indictment and based on evidence provided in discovery, on December 15, 2012, defendant "Mohammed met in person with the purported associate of the [FBI Online Covert Employee (OCE)]. . . ." *See* Indictment at ¶ 44. Accordingly, the government verified that the person purporting to use the incriminating Email address and attempting to provide material support to a terrorist organization in the Internet chat room was in fact, defendant Mohammed. No such allegation or evidence exists with respect to Mr. Said.

"resolving to Kenya" in an futile attempt to identify Mr. Said as the person participating in the chat room conversations.

Despite the lack of reliable identification evidence, Mr. Said was arrested by FBI agents in Saudi Arabia and transported to a government aircraft for the approximately twenty-four (24) hour journey to the Southern District of Florida. During the flight, Mr. Said made certain statements that were product of a coercive interrogation.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Said is a 27 year old man who has resided in Kenya his entire life. Mr. Said was born in port city of Mombassa[3] and in 2009 moved to Nairobi to work as an engineer draftsman for his uncle. His entire family, including his wife and two young children reside in Kenya. Mr. Said had never traveled to the United States, has no family or acquaintances in the United States, and to his knowledge, never communicated with any person in the United States.

### A.   Alleged Pre-Trial Identification of Mr. Said

According to the government, the investigation of this case solely occurred over the Internet.[4] The targets of this investigation used a communication technique called join.me[5] which enables two or more computer users to share one computer screen. In join.me sessions, the participants would communicate by typing on the same word processing document. There are not video or audio

---

[3] Mombassa is the second-largest city in Kenya and is located on the east coast bordering the Indian Ocean. *See* www.Kenyaembassy.com.

[4] Through discovery, the government disclosed that, as part of the investigation, a total of twelve search warrants were issued to several on-line service providers. Each of the affidavits filed in support of the application for the search warrants contain almost the exact information. For the Court's convenience, a copy of the affidavit is attached hereto as Exhibit A.

[5] Join.me is owned by LogMeIn.com.

recordings of the actual participants who are typing on the one shared screen

As revealed in the affidavit filed in support of applications to obtain search warrants, the FB I used an Online Covert Employee (OCE) who allegedly "communicated with Mohammed and Said *exclusively* over the Internet." Exhibit A at ¶ 26 (emphasis added). This statement in regard to Mr. Said, is misleading. According to the materials provided by the government, during the undercover join.me sessions, the OCE communicated with an individual or individuals utilizing the Email names of "Bill," "Billph86," "Abdul-Rahman Abdul Rahim," and "Tibyan." At no time did the OCE or any other government agent physically witness Mr. Said or verify him as the person who actually used these Email names. Mr. Said denies that these Email names or addresses belong to him. Moreover, the documentary evidence, including the information obtained in response to the several search warrants, do not link Mr Said to any of these Email addresses. More importantly, the government has not produced any computer or electronic device allegedly belonging to or used by Mr. Said to participate in any session withe the OCE.

At best, the government attempts to link Mr. Said to these addresses based on the results of grand jury subpoenas issued to LogMeIn.com on computer Ids assigned to defendant Mohammed's machines which show that he "engaged in join.me sessions with an individual in Kenya."[6] *See* Exhibit A at ¶ 62. The government continues that "[b]y comparing the IP addresses resolving to Kenya with IP logs from the returns on a Federal Grand Jury subpoena on the Email address mohammedhsaid79@yahoo.com . . . it becomes apparent that Mohammed engaged in join.me sessions with the user of mohamedhsaid79@yahoo.com." *See* Exhibit A at ¶ 63. Finally, the

---

[6]Unlike with Mr. Said, the government did seize several computers and electronic devices belonging to defendant Mohammed.

government incredulously concludes that "[b]ecause the e-mail address mohamedhsaid79@yahoo.com is substantially similar to Said's full name [and] the user is located in Kenya . . ."[7] it is actually Mr. Said.[8]  *Id.*

Even more unbelievable is the government's next wholly unsupported conclusory statement that "in the same manner the FBI can demonstrate that Mohammed engaged in join.me sessions with the user of billph86@yahoo.com, which is known to be Said." *Id.*  How the address is "known to be Said" is not explained, nor is there any evidence in all the discovery produced by the government to date that Mr. Said was the actual individual who used such an Email name or address.

Accordingly, each time the Indictment states that "Said contacted the OCE" in reality, it is the unknown individual or individuals using the Email name and address that contacted the OCE. *See* Indictment ¶¶ 12, 15, 17-21, 23, 25-27, 31-32, 34-36, 45 - 48.  The identification procedures used to connect Mr. Said to the actions outlined in the Indictment are unreliable and there is a very substantial likelihood of irreparable misidentification.

**B.     Arrest in Saudi Arabia**

On August 6, 2013, Mr. Said was arrested in Jeedah, Saudi Arabia while traveling from Nairobi, Kenya, to Beirut, Lebanon, to begin a new job as an engineer draftsman.  Through discovery, Mr. Said learned that the job in Beirut was a ruse by US government agents to lure him

---

[7] According to the Internet World Statistics, as of December 31, 2013, there were over 21,000,000 Internet users in Kenya; third in line for most Internet users in Africa after Egypt and South Africa.  *See* www.internetworldstats.com/africa.htm.  However, since most people in Kenya do not have fixed phone lines, computers or electricity, most of the internet activity takes place in cyber cafes that provide access to the internet.  *Id.*

[8] Setting aside the obvious, that the name "Mohamed Said" is particularly common in Africa and the Middle East (see below); any person could have adopted this name or used Mr. Said's information as a cover to hide their true identity in order to participate in the incriminating chats.

out of Kenya in order to effectuate his capture and arrest in Saudi Arabia. Upon landing in Jeedah, Saudi officials escorted Mr. Said off the airplane, interrogated him, and eventually turned him over to agents of the Federal Bureau of Investigation (FB I"). Without his consent or knowledge, Mr. Said was then placed on an aircraft and flown to the Southern District of Florida, where on August 8, 2013, he made his initial appearance.

During the course of the twenty-four journey, FB I agents repeatedly questioned Mr. Said regarding his involvement in terrorist activities. Mr. Said was confused and did not understand why he had been arrested by the government of the United States. Despite his confusion and repeated denials of participation in any terrorist related activities, the agents continued to question him and even showed pictures of his wife in an attempt to coerce a confession. As a result of this coercive scenario, Mr. Said made certain statements that should be suppressed.

### C. Procedural Background

Three months prior to their arrest, on May 21, 2013, Gufran Ahmed Kauser Mohamed and Mohammed Hussein Said were charged in a multi-count Indictment with providing material support to a foreign terrorist organization in violation of Title 18, United States Code, Section 2339B(a)(1).[9] [D.E. 3]. Specifically, Mr. Said was charged in a total of eight counts with conspiracy (Count 1) and attempting (Counts 2 - 8) to provide material support. According to the Indictment, the defendants conspired and attempted to provide material support to the following foreign terrorist organizations: (1) Al-Qu'aida, the international terrorist group; (2) Al-Nusrah Front, terrorist organization based in Syria; and (3) Al-Shabaab, terrorist organization based in Somalia. *See* Indictment at ¶¶ 1-8.

---

[9] The Indictment charged Mohammed with a total of fifteen counts.

On July 18, 2014, Mohammed plead guilty [D.E. 77] and was subsequently sentenced to fifteen (15) years incarceration [D.E.121]. Mr. Said is the sole remaining defendant and his trial is scheduled to begin on May 4, 2015.

### III. MEMORANDUM OF LAW

**A.     The Pre-Trial Identification of Mr. Said Based Solely on Internet-Connected Devices Must be Suppressed as Inherently Unreliable**

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . Be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. One of the fundamental goals of the Due Process Clause is to "protect persons not from deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Accordingly, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling a defendant to contest the basis upon which the government proposes to deprive them of protected interests. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). There can be no dispute that the core of these requirements is the ability of a defendant to contest the identification procedures utilized by the government to take away his liberty.

As the Supreme Court explained in *Neil v. Biggers*, the "primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'" 409 U.S. 188, 198 (1972), *quoting Simmons v. United States*, 390 U.S. 377, 384 (1968). "It is the likelihood of misidentification which violates a defendant's right to due process" and a basis for exclusion of evidence. *Id*. In *Biggers*, the Supreme Court instructed that the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a "substantial likelihood of misidentifications. *Id* at 201. Although *Biggers* and its progeny address misidentification procedures relating to eyewitness testimony, the rationale articulated by the Supreme Court is equally applicable in cases where the

sole method of identification relied upon by the police is Internet-connected devices.[10] Such reliance, as outlined below, constitutes improper police conduct and creates a "substantial likelihood of misidentification" requiring suppression. *See Manson v. Braithwaite*, 432 U.S. 98 (1977)(if identification is challenged, the court must determine whether the procedures were unreliable).

Despite the rapid evolution of technology, the singular reliance on Internet-connected devices, including Email names and IP addresses, to identify an actual user in relation to a crime is not yet sufficiently reliable. As this court recently held, IP addresses "are especially not representative of individual people." *Malibu Media v. John Doe*, No. 14-60259-UU, 2014 U.S. Dist. LEXIS 82480 (S.D.F.L. May 20, 2014). In *Malibu*, the court, *sua sponte*, dismissed a copyright infringement case for lack of venue after giving the plaintiff an opportunity to present additional evidence that the results of IP address geolocation were valid and accurate. *Id.* A copy of the Court's Order is attached hereto as Exhibit B.

Relying on significant technological literature that suggested that such identification procedures were unreliable, the court rejected the plaintiff's identification procedures. *Id.* In reaching this conclusion , the court explained:

> "[a]mong the many challenges presented by the Internet is that the Internet itself possesses no inherent mechanism for determining the geographic location of connected devices. While Domain Name System (DNS) entries can include a location record, there is no standard protocol to provide global location data which corresponds with an Internet Protocol (IP) address. Furthermore, the size and complexity of the Internet coupled with its highly diffuse ownership and user-base provides no single repository or authority which could maintain such data . . . . databases of IP location mappings tend to be rough and incomplete - also due to the Internet's rapid expansion.

---

[10]Despite lengthy research, counsel could not find any case law precisely on point. Accordingly, the issue appears to be one of first impression.

*Id.* (citations omitted). The court refused to rely on the plaintiff's mere conclusory statements to establish that the defendant could be found with the Southern District of Florida.

As the court expanded in the final Order dismissing the Complaint, "[t]here is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether the person lives in the district." *See* Exhibit B at 1. Further dismissing plaintiff's argument that internet service providers typically provide internet to residences, the court pointed out that "geolocation software cannot identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright." *Id.* at 1-2.

Likewise, in the instant case, the government cannot identify who actually had access to the computer used to participate in this crime and relies on mere conclusory statements that fall well below those in the *Malibu* copyright infringement case. As revealed thus far, the government's sole method to identify Mr. Said as the alleged participant in the incriminating join.me sessions with defendant Mohamed and the OCE, is through Email addresses that bear a resemblance to his name and the fact that **one** of the IP addresses "resolved in Kenya." *See* Exhibit A.

There has been no evidence produced that Mr. Said was the actual person using these Email names or the computer attached to the IP address in Kenya.[11] Indeed, the government has not provided any computer belonging to Mr. Said or even identified any potential cyber café where he could have accessed the internet to participate in the chat room sessions  As previously cited, Kenya

---

[11]Adding further doubt to any possible reliance on an IP address as an identifier, is the government's admission that the participants of the chat room used Virtual Private Networks (VPM) which allow a user to access the Internet through a server that is not associated with their ISP or physical location. *See* Exhibit A at ¶ 22. The use of such VPMs renders the IP address meaningless as an identifier.

has over 21 million internet users and identifying Mr. Said as the participant based on the fact that defendant Mohamed chatted with an individual using an IP address traced the country of Kenya can only be described speculation and conjecture.[12] *See Malibu, supra* (Mere speculation and conjecture will not suffice for identification purposes).

An even further stretch is solely relying on an alleged Email name to identify Mr. Said as the participant in the incriminating chats. Aside from the patently obvious fact that several million people around the world share the name "Mohamed"; "Said" is also a common surname. For example, to name a few: the former Prime Minister of Libya is Mohammad Osman Said; the former acting Prime Minister of Yemen is Mohammad Said al-Attar; the former Prime Minister of Iraq is Mohammed Said Pasha; and even a famous Swedish actor on a current TV drama series shares the name, Mohamed Said.

Accordingly, singular reliance on Internet-connected devices, including Email names and IP addresses, to identify Mr. Said as the individual responsible for the activities described in the Indictment are inherently unreliable and constitute improper police conduct. As such, his pre-trial identification must be suppressed.

---

[12]As this court pointed out in *Malibu* there are several impediments to establishing identity. For example, "a publicly-viewable IP address may represent more than a router or gateway through which other devices connect. These devices may then be part of a large intranet, may have their own private IP addresses that are not visible to users of the Internet outside of the intranet to which the device is connected." *Id.* Further, there "are public proxy servers and Common Gateway Interface (CGI) proxy servers - intended in some instances to specifically provide anonymity to torrent seeds . . and downloaders." *Id.* Likewise, "the possibility of IP address spoofing . . . should not be ignored. *Id.*

>   B.   **Mr. Said's Statements were Involuntarily Given and Violate his Fifth Amendment Right Against Self-Incrimination**

The Fifth Amendment of the United States Constitution provides in relevant part that "[n]o person . . . shall be compelled in an y criminal case to be a witness against himself." U.S. Const. Amend. V. The right against self-incrimination is the Constitutional basis for the requirement that statements must be voluntary in order to be admitted into evidence at trial. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). In determining whether a statement was voluntary, courts must consider whether, given the totality of the circumstances, the statement was a product of a rational intellect and free will. *Townsend v. Saine*, 372 U.S. 293, 307-08 (1963).

A statement is not voluntary if it is obtained by the use of coercion. Coercion can be mental as well as physical, and "the efficiency of the rack and the thumbscrew can be matched, given the proper subject, by more sophisticated modes of persuasion." *Blackburn v. State of Alabama*, 361 U.S. 199, 206. The government must prove that a confession is voluntary be a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 47, 489 (1972).

Mr. Said alleges that after his abduction in Saudi Arabia by agents of the United States government and during the course of his twenty-four hour journey hour to Miami, agents of the Federal Bureau of Investigation coerced him into making incriminating statements. Mr. Said was scared, confused, and did not have the proper state of mind or rational intellect to exercise free will. Mr. Said was on his way to Beirut to begin, what he thought, was a new job. All of the sudden, during the Jeedah stop over, he was forcibly abducted by foreign agents who were accusing him of horrible terrorist acts. Mr. Said was mentally tortured and unable to make rational decisions.

To make matters worse, the agents show Mr. Said pictures of his wife and threaten her with

prosecution if he does not cooperate. Where law enforcement agents induce an admission by threatening to prosecute a third party, the admission is involuntary if the police did nota have probable cause to believe that the third party had committed a crime. *See Martin v. Kemp*, 760 F.2d 1244, 1247-48 (11th Cir. 1985). The burden is on the defense to show that at the time of the threat, the agents did not "observe a high standard of good faith based on probable cause to believe that the third party had committed a crime." *Kemp.* 760 F.2d at 1247.

In the instance case, the FB I had no probable cause to threaten Mr. Said with the arrest of his wife. There was no evidence that Mr. Said's wife was involved in any terrorist related activities or that she ever communicated with the OCE or any other individual. Indeed, as outlined in the previous section, there is not evidence that Mr. Said was the actual person involved in the internet conversations that contained the alleged terrorist related conversations. Accordingly, the agents threat to arrest his wife was solely an attempt to obtain an incriminating statement using coercive measures.

  **C.** **Mr. Said Has a Constitutional Right to a Hearing**

In *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964), the Supreme Court held that an evidentiary hearing is Constitutionally mandated when a defendant timely argues that his statement is inadmissible because it was not voluntarily given.

### IV. CONCLUSION

For the foregoing reasons and pursuant to the Fifth Amendment of the United States Constitution, Mr. Said respectfully requests that his pre-trail identification, based on Internet-

connected devices, as the defendant in this case and subsequent statements be suppressed..

                                         Respectfully submitted,

                                         **PIÑERA-VAZQUEZ LAW FIRM**
                                         International Center
                                         1900 Southwest 3rd Avenue
                                         Miami, Florida 33129
                                         Tel:  (305) 443-0629

                                           /s/ Silvia B. Piñera-Vazquez  
                                         Silvia B. Piñera-Vazquez
                                         Florida Bar Number 821537


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 25, 2015,[13] the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that this document is being served simultaneously on all counsel of record in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF, or in another authorized manner.

                                           /s/ Silvia B. Piñera-Vazquez  
                                         Silvia B. Piñera-Vazquez, Esq.

---

[13] On Thursday, January 22, 2015, in preparation for the filing of this motion to suppres, as undersigned counsel was reviewing a flash drive and CDs provided by the government in this case during discovery, a browser hijacker virus, wse vosteran, hijacked the entire computer network system.   As a result, undersigned counsel was unable to access the motions under preparation in this case.  Afer several hours of unsuccessfully  attempting to remove the virus, undersigned counsel contacted  AUSA Brian Frazier who stated that he did not object to filing this motion to suppress by January 26, 2015.  Undersigned counsel was not able to safely access the saved motions until this weekend.  Accordingly, due to the unexpected technological emergency, Mr. Said respectfully requests that he be permitted to file this Morion to Suppress one day late.