UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20364-CR-UNGARO

UNITED STATES OF AMERICA

v.

MOHAMED HUSSEIN SAID,
    a/k/a "Bill,"
    a/k/a "Billph86,"
    a/k/a "Mohammed Salem bin Abdisheikh,"
    a/k/a "Mohamed Hussein,"
    a/k/a "Abdul-Rahman Abdul Rahim,"
    a/k/a "Tibyan,"

              Defendant.

_____/

## FACTUAL PROFFER

If this case were to proceed to trial, the government would prove the following facts beyond a reasonable doubt:

Defendant **MOHAMED HUSSEIN SAID** ("SAID") is a Kenyan citizen who was living in Kenya at all times pertinent to this case. **SAID** knowingly served as a fundraiser and recruiter for the al-Shabaab terrorist group and received Western Union wire transfers from his co-defendant, Gufran Mohammed ("Mohammed"), a United States citizen, for the purpose of funding al-Shabaab. **SAID** further communicated with an FBI Undercover Employee ("UCE") who was posing as a terrorist fundraiser, recruiter, and supplier, and selected no less than four seasoned terrorist operatives to work with the UCE. **SAID** planned to send these individuals to Syria, where they would wage violent jihad on behalf of the al-Qa'ida and al-Qa'ida in Iraq/al-Nusrah Front terrorist groups. Mohammed had introduced the UCE to **SAID** for the purpose of supporting these organizations, and **SAID**, with Mohammed's continued assistance, endeavored

to do so.

Each of the three main terrorist groups at issue in this case—al-Shabaab, al-Qa'ida, and al-Qa'ida in Iraq—retained, at the time of the charged conduct, a separate designation under United States law as a Foreign Terrorist Organization ("FTO"). The name al-Nusrah Front was added as an alias to the preexisting designation of al-Qa'ida in Iraq on December 11, 2012, before the conduct charged in this case ended. Based on their designation as FTOs, conspiring to provide material support and resources to these groups violates 18 U.S.C. § 2339B(a)(1). Providing material support and resources is defined under the statute to include providing currency, monetary instruments, financial services, and personnel.

This case involves Western Union wire transfers that **SAID** knowingly received from Mohammed for the support of al-Shabaab. Mohammed started to send funds to **SAID** in June 2011, just after a May 2011 meeting in Saudi Arabia where they had finalized their plans. The total amount of documented wire transfers to **SAID**, consisting of the seven wire transfers charged as overt acts in Count 1 of the Indictment, was approximately $11,672. According to Western Union records, Mohammed used other individuals to send the transfers. **SAID** used his wife, and twice went himself, to pick up the transfers sent to him by Mohammed and his associates. **SAID** and his wife provided their true Kenyan and Bosnian identification cards, respectively, to Western Union when they picked up the funds.

The illegal purpose of these donations is evident in **SAID**'s and Mohammed's communications at the time as well as what **SAID** and Mohammed later told the UCE about their activities. For example, when **SAID** met Mohammed in Saudi Arabia in May 2011, Mohammed provided **SAID** with funds for al-Shabaab. On June 6, 2011, using a substitution cipher that **SAID** himself had created, **SAID** sent an email to Mohammed that stated, "I sent and it was

2

distributed amng mujahideen." Later that day, Mohammed replied with his own email written in the same cipher code, "I am sendin this week more inshallah [Allah willing]." Mohammed did send further donations via Western Union later that week as promised. One was sent to **SAID** on June 7, 2011, for approximately $2,060, and another on June 12, 2011, for approximately $800. Mohammed and **SAID** exchanged encoded communications about additional wire transfers, including the Western Union number, the sender's name, and the amount. **SAID** later told the UCE the name of one of Mohammed's senders, a name that appears in Western Union records, in Mohammed's iPhone contacts list, and in other electronic media belonging to Mohammed.

From March 2012 to January 2013, the UCE participated in multiple online exchanges with Mohammed, and after June 2012, when Mohammed introduced **SAID**, the UCE participated in more online exchanges with **SAID**. Many of these exchanges confirmed that **SAID** and Mohammed had been financially supporting al-Shabaab. This support continued throughout the charged timeframe. For example, on November 14, 2012, **SAID** told the UCE that Mohammed had lost contact with another "brother" to whom he sends money and that **SAID** was helping reestablish contact, indicating that Mohammed was still financing al-Shabaab and that **SAID** was still helping him. Even later, on December 21, 2012, **SAID** contacted the UCE and stated that he (**SAID**) would soon be traveling, so if the UCE spoke to Mohammed, the UCE should tell him to send the money for al-Shabaab.

**SAID** and Mohammed had adopted a special communication technique to conceal their conversations about al-Shabaab, and thinking it successful, **SAID** and the UCE then used it as well to speak about al-Qa'ida in Iraq/al-Nusrah Front. **SAID** also taught the UCE how to send encoded messages using a substitution cipher similar to the one **SAID** and Mohammed had used for the wire transfers. **SAID** used the following email accounts and telephone numbers, in

conjunction with his other communication methods, to facilitate his terrorist support activities:

mohamedhsaid79@yahoo.com

m_sain0@hotmail.com

billph86@yahoo.com

gedi1946@gmail.com

mohamed1hs@yahoo.com

thukaper@gmail.com

keneedybenson@yahoo.com

254739380426

254725393436

From June 2012 to August 2013, using these communication facilities and techniques, **SAID** and the UCE discussed various aspects of **SAID**'s activities for al-Shabaab. **SAID** confirmed that he was a fundraiser and contact for foreign recruits for al-Shabaab. **SAID** further told the UCE that he could provide the UCE with experienced al-Qa'ida and al-Shabaab fighters who could engage in violent jihad in Syria or otherwise work for al-Qa'ida and al-Qa'ida in Iraq/al-Nusrah Front, the groups the UCE purported to represent. **SAID** identified multiple such recruits with al-Qa'ida and al-Shabaab affiliations, placed the UCE in contact with one of them, made the others' passports available to the UCE, and talked with the UCE about how to move them to Syria. Throughout the UCE conversations, **SAID** showed an awareness of the violent nature and tactics of al-Shabaab, al-Qa'ida, and al-Qa'ida in Iraq/al-Nusrah Front, including the fact that al-Nusrah Front had been designated as an FTO under United States law.

From March 2011 to January 2012, **SAID** worked with Mohammed and an individual named Rahatul Khan, a United States citizen, to facilitate the movement of an individual from

4

the United States to Somalia, where he would join al-Shabaab or otherwise participate in violent jihad. This individual was in fact an FBI confidential human source ("CHS") with whom **SAID** discussed travel routes, al-Shabaab training, and possible terrorist operations. Around the same time, in March and April 2011, **SAID** worked to facilitate the movement of two United Kingdom recruits from Kenya to Somalia, where they too would join al-Shabaab or otherwise wage violent jihad. **SAID** spoke via email with an individual in Somalia about these recruits. The conversation was coded and the recruits were referred to as "tomatoes" and "dogs."

**SAID** was taken into FBI custody in Saudi Arabia on August 7, 2013, for the offenses charged in the Indictment. He had traveled to Saudi Arabia to pick up monies intended for the support of al-Qa'ida in Iraq/al-Nusrah Front. **SAID** was first brought into the United States when he and the arresting FBI agents landed together at Miami International Airport in the Southern District of Florida.

A list of the seven wire transfers from Mohammed to **SAID** that would be proven at trial is submitted as Exhibit A to this proffer.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 5/29/15

By: _____
BRIAN K. FRAZIER
ASSISTANT UNITED STATES ATTORNEY

Date: 5/28/2015

_____
SILVIA PINERA-VASQUEZ, ESQ.
ATTORNEY FOR DEFENDANT

Date: 5/28/2015

_____
MOHAMED HUSSEIN SAID
DEFENDANT

## EXHIBIT A

| Date | Amount | Sender Name | Recipient Name |
|---|---|---|---|
| June 7, 2011 | $2,062.55 | Abdulhameed Mohammed Borae | Mohammed Hussein |
| June 12, 2011 | $799.97 | Udairaj Maurya | Selma Ahmic |
| July 9, 2011 | $2,182.55 | Abdulhameed Mohammed Borae | Selma Ahmic |
| July 13, 2011 | $746.60 | Udairaj Maurya | Selma Ahmic |
| August 10, 2011 | $2,941.09 | Abdulhamid Mohd Hussein Boraei | Selma Ahmic |
| August 28, 2011 | $1,926.35 | Udairaj Maurya | Selma Ahmic |
| September 13, 2011 | $1,013.09 | Udairaj Maurya | Selma Ahmic |